UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRELL FREY,

                Petitioner,                Case Number 2:10-CV-10436
                                                              Honorable Lawrence P. Zatkoff

v.

CARMEN PALMER,

                Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING PERMISSION TO PROCEED ON APPEAL IN FORMA PAUPERIS**

This matter is before the Court on Petitioner Darrell Frey's petition for a writ of habeas corpus, filed under 28 U.S.C. § 2254. Petitioner is serving a 25-to-50 year sentence for his Wayne Circuit Court conviction for first-degree criminal sexual conduct, MICH. COMP. LAWS 750.520b(1)(a). The petition raises eight claims. The Court finds that Petitioner's claims are without merit or barred by Petitioner's procedural defaults. Therefore, the petition will be denied. The Court will also deny Petitioner a certificate of appealability and deny permission to proceed on appeal informa pauperis.

**I. Facts and Procedural History**

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> The victim, defendant's nephew, testified that on December 16, 2006, when he was 7 years old, defendant came into the bathroom while he was taking a shower. After the victim got out of the shower, defendant put his "[t]hing" in the victim's buttocks. After the victim complained to his mother that evening that defendant had put "his nasty thing in his butt," the victim's parents took him to the hospital. At the

> hospital, a nurse completed a rape kit. She included the victim's underwear in the kit. Semen was found on the underwear, and a swatch of the underwear containing the semen was sent for DNA testing. Natalie Morgan, the prosecutor's expert witness, testified that DNA found on the underwear swatch matched the DNA of defendant.

*People v. Frey*, 2009 Mich. App. LEXIS 1601 (Mich. Ct. App. July 23, 2009).

Petitioner appealed his conviction to the Michigan Court of Appeals. His appellate brief raised the following claims:

> I. The trial court's denial of defendant's request for an adjournment violated defendant's rights to due process and the effective assistance of counsel and interfered with counsel's ability to prepare an effective defense to meet the prosecution's case.
>
> II. Defendant was denied due process and a fair trial and the right to present a defense by the destruction of DNA samples before independent testing could be performed.
>
> III. The prosecutor's failure to provide discovery until the second day of trial denied defendant the opportunity to prepare for trial or to employ an independent expert and defendant should be granted a new trial.
>
> IV. Because defendant had no opportunity to cross-examine the technician who performed the laboratory tests used against him, his Sixth Amendment right to confrontation was violated and his conviction should be reversed.
>
> V. Defendant was denied a fair trial by the introduction of an inadmissible, irrelevant but highly prejudicial report concerning sexual assaults.
>
> VI. Defendant was denied a fair trial by the prosecutor's misconduct in eliciting sympathy for the victim, shifting the burden of proof, using evidence improperly, and arguing facts not in evidence.
>
> VII. Defendant's 25-year mandatory minimum sentence is disproportionate and constitutes cruel and unusual punishment.
>
> VIII. The trial court committed plain error in imposing attorney fees without finding that defendant had the ability to pay.
>
> The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished opinion.

*Id.* Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court,

raising the same claims he asserted in the Michigan Court of Appeals. The Michigan Supreme Court denied the application because the Court was not persuaded that the questions presented should be reviewed. *People v. Frey*, 485 Mich. 1010 (2009) (table).

Petitioner then filed the instant petition, raising the same claims he presented to the state courts in his appeal of right.

## II. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court

decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)(*quoting Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)(*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (*citing Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id*. "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. at 786.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id*. Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (*citing Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979))(Stevens,

J., concurring in judgment). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-787.

### III. Analysis

### A. Adjournment

Petitioner's first claim asserts that the trial court wrongfully denied his motion to adjourn the trial because he had not received discovery materials from the prosecutor. The motion was made on the morning of the first day of trial. It was denied on the grounds that counsel did not promptly bring the discovery problem to the court's attention.

A trial court's denial of a continuance can rise to the level of a constitutional violation where there is "an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay.'" *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983) (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)). "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Ungar*, 376 U.S. at 589. To obtain habeas relief, it is not sufficient for the petitioner to show that the trial court arbitrarily denied the continuance request; he "must also show that the denial of a continuance actually prejudiced his . . . defense." *Burton v. Renico*, 391 F.3d 764, 772 (6th Cir. 2004). "Actual prejudice may be demonstrated by showing that additional time would have made relevant witnesses available or otherwise benefitted the defense." *Powell v. Collins*, 332 F.3d 376, 396 (6th Cir. 2003).

Here, the decision by the Michigan Court of Appeals that the trial court did not abuse its

discretion in denying the adjournment request was not objectively unreasonable. On February 20, 2008, a little more than a week before trial was scheduled to begin, Petitioner's counsel asserted that while he had received the results of the DNA testing, he wanted copies of the data and notes. Defense counsel had known for months that DNA evidence would be used in the case, but he waited until the eve of trial to request these additional materials. Nevertheless, the trial court ordered the prosecutor to provide Petitioner's counsel with the additional information by February 25, 2008. On the first day of trial, March 3, 2008, Petitioner requested an adjournment because he still had not received the materials. The prosecutor responded that she offered to fax the materials to defense counsel, but he refused to give her his fax number, so she used the regular mail instead. The trial court denied the motion because Petitioner had waited until the day of trial to complain about not receiving the materials. On the next trial date, March 4, 2008, one of the prosecution witnesses who was in possession of the materials delivered them to Petitioner's counsel. This sequence of events shows that the trial court did not arbitrarily deny Petitioner's motion to adjourn the trial. Rather, the court denied the motion because Petitioner was dilatory in his request for the materials, and then he did not promptly bring the matter to the court's attention when he did not receive the materials on time.[1]

Furthermore, Petitioner has not shown how the failure to grant a continuance prejudiced his defense. The fact remains that the seven-year-old victim testified that Petitioner raped him, that he immediately told his parents, and that semen was found in the victim's underwear at the hospital. Petitioner does not state how earlier receipt of the notes and data from the DNA testing would have

---

[1] The Court notes that the primary reason Petitioner did not receive the materials promptly was because Petitioner's counsel refused to give his fax number to the prosecutor and the prosecutor had to send the materials via U.S. Mail.

improved his cross-examination of the prosecutor's expert witnesses in a way that would have significantly undermined the case against him. Accordingly, Petitioner is not entitled to habeas relief based on this claim.

### B. Destruction of Evidence

Petitioner's second claim asserts that he was denied due process when the lab used by the prosecutor consumed the genetic material on the swabs and underwear cuttings during DNA testing, and therefore it prevented the defense from conducting any of their own tests on these materials.

The failure of police to preserve evidence that is only potentially useful for a defendant is not a denial of due process of law unless the defendant can show bad faith on the part of police. *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988). When the state fails to preserve evidentiary material "of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant," a defendant must show: (1) that the government acted in bad faith in failing to preserve the evidence; (2) that the exculpatory value of the evidence was apparent before its destruction; and (3) that the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other means. *Monzo v. Edwards*, 281 F. 3d 568, 580 (6th Cir. 2002). A habeas petitioner has the burden of establishing that the police acted in bad faith in failing to preserve potentially exculpatory evidence. See *Malcum v. Burt*, 276 F. Supp. 2d 664, 683 (E.D. Mich. 2003)(internal citations omitted). "The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Youngblood*, 488 U.S. at 56.

Petitioner asserts that the prosecution acted in bad faith by allowing the testing lab to

consume all the genetic material. But there is no evidence whatsoever that the prosecution had knowledge or belief that the evidence had any exculpatory value. Certainly no exculpatory value would have been apparent. The victim identified Petitioner as the perpetrator immediately after the incident and the genetic material was obtained at the hospital soon afterwards. As Petitioner has failed to show how the prosecution acted in bad faith, the rejection of this claim by the state courts was not objectively unreasonable.

### C. Discovery

Petitioner's third claim asserts that the prosecutor violated the trial court's discovery order when it failed to produce reports relating to the DNA testing until the second day of trial.

First, to the extent that Petitioner is claiming that the prosecutor violated state discovery rules, he is not entitled to habeas relief. "It is well settled that there is no general constitutional right to discovery in a criminal case." *Stadler v. Curtin*, 682 F. Supp. 2d 807, 818 (E.D. Mich. 2010) (citing *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988)). A claim that a prosecutor violated state discovery rules is not cognizable in federal habeas review because it is not a constitutional violation. *See Lorraine v. Coyle*, 291 F.3d 416, 441 (6th Cir. 2002).

Second, regarding Petitioner's claim under *Brady v Maryland*, 373 U.S. 83 (1963), the Supreme Court has held that the prosecutor's failure to disclose evidence favorable to the defense constitutes a denial of due process "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. In other words, to find a *Brady* violation, not only must the evidence be suppressed, but the suppressed evidence must be material and favorable to the accused. *Elmore v. Foltz*, 768 F.2d 773, 777 (6th Cir. 1985).

Favorable evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985); see also *Kyles v. Whitley*, 514 U.S. 419, 432-36 (1995) (same).

For the reasons stated above, Petitioner has not demonstrated that the notes and data disclosed during the second day of trial were favorable to the defense. Petitioner has not indicated how the information in the notes and data could have been used to undermine the expert witness's testimony. Nor has he proffered any evidence that he would have been able to produce an expert witness of his own who could have used the information for the benefit of Petitioner's defense. Accordingly, this claim was reasonably denied by the state courts.

### D. Confrontation Clause

Petitioner argues in his fourth claim that he was denied his federal constitutional right to confrontation because the analyst who performed the DNA testing at the lab in Virginia did not testify at trial.

Respondent argues that this claim is procedurally defaulted because Petitioner failed to raise any objection under the Confrontation Clause during the prosecution expert's testimony, and the state appellate court relied on this procedural ground in declining to review the claim. The Court agrees with Respondent that the claim is procedurally defaulted.

A federal habeas court may not consider the merits of a procedurally defaulted claim unless the petitioner demonstrates cause for the default and prejudice resulting or that failing to review the claim would result in a fundamental miscarriage of justice. *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006). A claim may become procedurally defaulted when a state prisoner has failed to comply with an independent and adequate state procedural rule, causing him to forfeit review of his

federal claims in state court. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A prisoner may procedurally default his federal claim when he fails to comply with a state procedural rule that requires him to preserve his claimed error at trial for appellate review by making a contemporaneous objection at trial. *Engle v. Isaac*, 456 U.S. 107, 126-29 (1982).

A federal court applies a three-part test to determine if a state prisoner has procedurally defaulted his federal constitutional claims in state court. *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003). First, there must be a firmly established state procedural rule which is applicable to the petitioner's claim and the petitioner must have not complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991). Second, it must fairly appear that the last state court to which the petitioner sought review relied on the procedural rule as a basis for its decision to refuse to review the prisoner's federal claims. *Coleman*, 501 U.S. at 740; *Harris v. Reed*, 489 U.S. 255, 263 (1989). Third, the procedural default must be an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. *County Court of Ulster County, New York v. Allen*, 442 U.S. 140 (1979); *Rust v. Zent*, 17 F.3d at 160. If these three prerequisites are met, the prisoner has procedurally defaulted his federal claims in state court, and the cause and prejudice test applies to determine whether the prisoner's failure to comply with the state procedural rule will be excused so that a federal court can address the claim in a federal habeas corpus proceeding. *Willis*, 351 F.3d at 745. If the state court declares itself limited to plain error review because the petitioner failed to preserve an issue, the state procedural bar has been established and the cause and prejudice test applies. *Lundgren*, 440 F.3d at 765.

Here, Petitioner failed to object to the testimony of the prosecutor's expert on Confrontation Clause grounds until after her testimony was completed, and the appellate court relied on this failure

to limit its review of Petitioner's constitutional claim to plain error effecting substantial rights. The failure to properly raise and preserve issues in the trial court by contemporaneous objection is a generally recognized and firmly established independent and adequate state law ground for refusing to review trial errors. *Coleman*, 501 U.S. at 750-51. Plain-error review by a state appellate court constitutes enforcement of a state's contemporaneous-objection rule. *Williams v. Bagley*, 380 F.3d 932, 968 (6th Cir. 2004). The contemporaneous objection rule constitutes an adequate and independent state law ground that bars habeas review of this claim unless the petitioner can establish the requirements to excuse the default. *Taylor v. McKee*, 649 F.3d 446, 450-51 (6th Cir. 2011). Therefore, because Petitioner did not contemporaneously object on Confrontation Clause grounds, and the Michigan Court of Appeals relied on this failure in limiting its review to plain error, the claim is procedurally defaulted.

A federal habeas court is barred from reviewing procedurally defaulted claims unless the prisoner can show that the default should be excused. A procedural default may be excused if the prisoner can establish cause for his failure to comply with the state procedural requirement and actual prejudice to his defense at trial or on appeal. *Teague v. Lane*, 489 U.S. 288, 298-99 (1989). If the prisoner cannot establish cause and prejudice, he may still obtain habeas review if he submits new evidence showing that a constitutional violation probably resulted in a conviction of one who is actually innocent. *Dretke v. Haley*, 541 U.S. 386, 393 (2004); *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986).

To establish cause, the Petitioner must present a substantial reason to excuse the default. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's effort to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417

(6th Cir. 2006) (quoting *Carrier*, 477 U.S. at 488). To show prejudice, the Petitioner must demonstrate that the constitutional error worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982). There is no prejudice where the petitioner does not show a reasonable probability of a different verdict. *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003).

The Petitioner can establish neither cause nor prejudice on this record. The Petitioner cannot establish cause because he has failed to establish or even argue that an objective factor external to the defense prevented him from complying with the contemporaneous objection rule.

Petitioner cannot establish prejudice because the claim is plainly meritless. In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court held that certain out-of-court statements are barred by the Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity for cross-examination, even if the trial court finds the statements to be otherwise reliable. 541 U.S. at 68. This rule applies only to out-of-court statements that are "testimonial" in nature. See *Whorton v. Bockting*, 549 U.S. 406, 419-20 (2007). Laboratory reports qualify as "testimonial statements." *Melendez-Diaz v. Massachusetts*, 557 U.S. ___, 129 S. Ct. 2527, 2532, 174 L. Ed. 2d 314 (2009). In *Melendez-Diaz*, the Supreme Court held that the right to confrontation applies to the admission of affidavits and analysts' certificates which state the results of forensic testing. *Melendez-Diaz*'s attorney objected to the admission of affidavits stating that a substance tested at a lab contained cocaine because their admission was a violation of the Confrontation Clause absent the presentation of the state laboratory analyst who had conducted the testing.

In this case, Natalie Morgan testified that she worked as a senior DNA analyst for Bode Technologies in Virginia. Morgan testified that she was personally present and working with

another technician who also processed the DNA evidence in Petitioner's case. Morgan confirmed that she and the other analyst were the only ones who worked on the DNA analysis in this case. Morgan did not testify from a report prepared from the other analyst, but rather her testimony was based on her own personal observations of the testing. Petitioner suggests that a report authored by the other analyst was admitted at trial, but the record does not indicate that any such report was offered or entered into evidence. Accordingly, no testimonial hearsay was admitted at trial that could form the basis of a Confrontation Clause claim.

The Petitioner procedurally defaulted his Confrontation Clause claim in state court, and has failed to establish that the default should be excused. Therefore, this Court is barred from granting relief on that claim.

### E. Admission of Expert Testimony

Petitioner's fifth claim asserts that the trial court erred in allowing the doctor who examined the victim at the hospital to testify that, in over half of sexual assault cases, there is no physical manifestations of the assault. Petitioner asserts that the testimony was inadmissible under Michigan Rule of Evidence 702.

As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62, 68 (1991), an inquiry into whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67-68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68.

State-court evidentiary rulings cannot rise to the level of due process violations unless they

"'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)).  Petitioner makes no attempt to demonstrate a constitutional deprivation.  Instead, he principally argues that the evidence was admitted in violation of state law, as set forth in Rule 702 and *Gilbert v. DaimlerChrysler Corp.*, 470 Mich. 749 (2004). Petitioner's claim rests on state law and is therefore noncognizable. *Estelle*, 502 U.S. at 67-68.

### F. Prosecutorial Misconduct

Petitioner's sixth claim asserts that the misconduct of the prosecutor rendered his trial unfair. "Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004).  Prosecutorial misconduct will form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances surrounding each individual case." *Angel v. Overberg*, 682 F. 2d 605, 608 (6th Cir. 1982). The Court must focus on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F. 3d 959, 964 (6th Cir.1997) (quoting *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993)). Finally, the Supreme Court has clearly indicated that the state courts should be given a great amount of discretion when adjudicating prosecutorial misconduct claims "because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F. 3d 501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. at 645). None of Petitioner's allegations of prosecutorial misconduct have merit under this standard.

Petitioner first asserts that the prosecutor improperly appealed to the jurors' sympathy for

the victim. It is well-settled that a prosecutor may not make remarks "calculated to incite the passions and prejudices of the jurors." *United States v. Solivan*, 937 F.2d 1146, 1151 (6th Cir. 1991). A prosecutor improperly invokes the passions and prejudices of the jury when he or she "calls on the jury's emotions and fears — rather than the evidence — to decide the case." *Johnson v. Bell*, 525 F.3d 466, 484 (6th Cir. 2008). In this case, when the young victim was asked during his testimony to describe what Petitioner had done to him, he began to cry. In order to calm the victim, the prosecutor told him that what had happened was not his fault. When the victim testified that he was afraid, the prosecutor asked him what was causing his fear. In closing argument, the prosecutor referred to the victim's reluctance on the stand and explained that no one would want to relive what the victim had experienced. These actions were not improper. The prosecutor did not suggest to the jury that it should convict Petitioner out of a sense of sympathy for the victim. Rather, the prosecutor was attempting to explain the victim's hesitation on the stand in an effort to explain why the jury should nevertheless believe his reluctant testimony.

Next, Petitioner asserts that the prosecutor improperly used evidence of his prior crimes to impugn his character. Evidence was presented that Petitioner had previously been convicted of obtaining property under false pretenses. Under Michigan Rule of Evidence 609, this evidence was relevant to Petitioner's character for truthfulness. Accordingly, it was not improper for the prosecutor to argue that Petitioner's credibility should be questioned in light of his prior conviction for a crime involving dishonesty.

Petitioner next asserts that the prosecutor shifted the burden of proof by stating that Petitioner did not attempt to explain how his semen ended up on the victim's underwear. A prosecutor may not shift the burden of proof to the defendant, *Patterson v. New York*, 432 U.S. 197,

215 (1977), or "suggest that the defendant ha[s] the burden of proof or any obligation to produce evidence to prove his innocence." *Joseph v. Coyle*, 469 F.3d 441, 474 (6th Cir. 2006) (quoting *United States v. Clark*, 982 F.2d 965, 968-69 (6th Cir. 1993)). Read in context, the complained-of argument referred to the fact that Petitioner testified but did not offer any innocent explanation how his genetic material got onto the victim's underwear. Even assuming the argument was burden-shifting, however, any possible prejudice which might have resulted was cured by the trial court's instructions regarding the proper burden of proof. See *Scott v. Elo*, 302 F. 3d 598, 603-04 (6th Cir. 2002).

Finally, Petitioner asserts that the prosecutor improperly argued that because Petitioner had a sexual interest in children, it was fair for the jury to infer that he penetrated the victim's anus and did not stop outside of the child's buttocks. A prosecutor has leeway to argue the evidence and reasonable inferences therefrom. See *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000). The victim's testimony that Petitioner penetrated him and the physical evidence of Petitioner's semen in the victim's underwear allowed the prosecutor to reasonably infer that Petitioner had a sexual interest in the victim and penetrated his anus. The comment was not improper.

Because none of Petitioner's allegations of prosecutorial misconduct have merit, he is not entitled to habeas relief based on this claim.

### G. Disproportionate Sentence

Petitioner argues that his sentence violates the Eighth Amendment because it is disproportionate to the severity of his crime. The United States Constitution does not require that all sentences be proportionate. "Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (quoting *Solem*

*v. Helm*, 463 U.S. 277, 288 (1983)). It is for this reason that "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Rummel v. Estelle*, 445 U.S. 263, 272 (1980). "Federal courts will therefore generally not engage in a proportionality analysis except where the sentence imposed is death or life imprisonment without parole." *Friday v. Pitcher*, 200 F. Supp. 2d 725, 744 (E.D. Mich. 2002) (citing *Seeger v. Straub*, 29 F. Supp. 2d 385, 392 (E.D. Mich. 1998)). Petitioner was sentenced to 25-to-50 years for first-degree criminal sexual conduct of a young boy. His sentences are not so grossly disproportionate that they violate the United States Constitution. Petitioner has failed to present a cognizable habeas claim.

### H. Attorney Fees

Finally, Petitioner contends that he was improperly ordered to repay the court for his appointed counsel's fees. The claim is frivolous. Where a habeas petitioner is not claiming the right to be released but is challenging the imposition of a fine or other costs, he or she may not bring a petition for writ of habeas corpus. See *United States v. Watroba*, 56 F. 3d 28, 29 (6th Cir. 1995).

### IV. Certificate of Appealability

Before Petitioner may appeal this decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. See *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude

the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id.* at 336-37. The Court concludes that a certificate of appealability is not warranted in this case because reasonable jurists could not debate the Court's assessment of Petitioner's claims. The Court will also deny Petitioner permission to proceed on appeal in forma pauperis because an appeal could not be taken in good faith.

## V. Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that permission to proceed on appeal in forma pauperis is **DENIED**.

IT IS SO ORDERED.

      s/Lawrence P. Zatkoff
      LAWRENCE P. ZATKOFF
      UNITED STATES DISTRICT JUDGE

Dated: June 4, 2012

CERTIFICATE OF SERVICE

    The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on June 4, 2012.

                                          s/Marie E. Verlinde
                                          Case Manager
                                          (810) 984-3290